627 So.2d 849 (1992)
Quang Ngoc BUI
v.
STATE.
3 Div. 557.
Court of Criminal Appeals of Alabama.
May 1, 1992.
Rehearing Denied June 12, 1992.

*850 ON RETURN TO REMAND
PATTERSON, Presiding Judge.
The appellant, Quang Ngoc Bui, was convicted on June 12, 1986, of the capital offense of the murder of his three children. He was sentenced to death by electrocution for this conviction. The conviction and sentence were affirmed by this court on April 12, 1988, Bui v. State, 551 So.2d 1094 (Ala.Cr.App. 1988), and our supreme court affirmed on July 14, 1989, Ex parte Bui, 551 So.2d 1125 (Ala.1989). However, on April 22, 1991, the United States Supreme Court vacated this latter judgment and remanded the case for further consideration in light of Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Bui v. Alabama, 449 U.S. 971, 111 S.Ct. 1613, 113 L.Ed.2d 712 (1991). Thereafter, pursuant to our supreme court's directive of July 12, 1991, Ex parte Bui, 627 So.2d 848 (Ala.1991), this court remanded this case to the trial court with the instruction that the trial court hold a hearing on the state's use of its peremptory strikes. Bui v. State, 627 So.2d 849 (Ala.Cr.App. 1991).
Proceedings were held in the trial court pursuant to this remand on September 19, October 1, and October 2, 1991. In the proceedings of September 19, the state, through Ms. Ellen Brooks,[1] notified the court that the prosecution's files containing the notes of the prosecutors had not been found. Ms. Brooks indicated that these notes were "our personal things where we noted things from observing the jury and hearing the voir dire and that kind of thing." A continuance, at the prosecution's request, was granted to October 1. On that date, the hearing was rescheduled for the following day because of Bui's absence.
Evidence and argument presented during the September 19 and October 2 hearings established and the trial court found that the prosecution used 9[2] of its 13 peremptory strikes to exclude blacks from jury service (the last strike designating a white male as the second alternate); and that 1 black served on the jury. The record further shows that the defense used one of its strikes to eliminate a black. The trial court further found that a total of 15 blacks were on the venire. (This finding is not supported by any evidence in the record before us.) The record shows definitely that two blacks were struck for cause on the prosecution's challenge; it fails to show what happened to the remaining three black venirepersons.
During the October 2 hearing, the prosecution implied that, because it had not found its files, it reconstructed its reasons for its strikes from a review of that portion of the trial transcript showing the voir dire, a review of "an occupation strike list," and a review of "criminal histories" on the venirepersons. Ms. Brooks noted that unavailable at the hearing, but available at the time of jury selection, were notes by the witnesses and employees about the veniremembers and also personal notes of observations on and comments made by the venirepersons. Ms. Brooks explained that generally the prosecution struck primarily on four grounds: (1) any criminal history; (2) knowledge of the defense attorneys, of Bui, or of any members of their families; (3) unemployment, i.e., the status of being employed, retired, or fulltime student was desirable; and (4) young in age.
*851 In regard to the last consideration, Ms. Brooks explained the following:
"We were looking for people who had some maturity, some experience in life, who were old enough perhaps to have children, since this involved the death of three children, who perhaps had had marital problems, since this apparently was triggered or involved the defense of a relationship between the defendant and his wife, and the defense we anticipated would bring out, and did bring out, some difficulties between the two of them. We were looking for people who had made decisions in life such as, you know, to get married, to take a job, to make job decisions, to make decisions on how to raise their kids. People who had some maturity."
(We note that the trial court, at voir dire examination of the venire, denied the prosecution's request that the veniremembers be asked whether any member had children.)
Thereafter, the prosecution gave the following specific explanations of its striking of black persons. The first strike was exercised to exclude a 24-year-old black female on the grounds that she had a "extensive criminal history" with 9 convictions or charges and that she was 24 years old. During questioning of the venire, this venireperson represented that she was employed by the Montgomery Board of Education. The second strike excluded a 20-year-old black female on the grounds that she had been arrested for harassment within the year preceding Bui's trial and that she was of a young age. The third strike excluded a 32-year-old black female for the following reasons: (1) she was of a "youthful age"; (2) she "had appeared as a witness in grand jury"; and (3) she lived on North Caffey Drive, alleged to be known for its "problems with drugs." Ms. Brooks found this latter ground to be significant because a potential state's witness was "the narcotics commander at that time who was known at Caffey Drive and elsewhere as being involved in drug work"; because there existed an allegation that Bui's wife "had planted drugs in an attempt to frame her husband," so "drugs therefore [were] involved in this case"; and because two "well publicized" cases prosecuted by Ms. Brooks involved the prosecution of a defendant who "was known to sell and deal in drugs" on Caffey Drive. In regard to her appearance before the grand jury, this venireperson explained, during questioning of the venire, that her appearance had been 10 years ago and that she had been called by the state. The prosecution's fourth strike excluded a 24-year-old black male who was struck because of his age, because he was unemployed, and because he had been arrested for trespassing in the year preceding the trial. (Bui's attorney asserted that, according to his notes, this venireperson was an instructor at J. F. Ingram Technical College.) The prosecution's fifth strike excluded a 21-year-old black male because of his age. The sixth strike excluded a 26-year-old black female primarily because of age and, also, because she resided on a street "highly known for drug dealings." The eighth strike was exercised to exclude a 45-year-old black female because she was unemployed and because, while she professed to know the above-mentioned narcotics officer who was a potential state witness, the officer, when reviewing the venire list, did not indicate that he knew her[3] and, thus, "[Ms. Brooks] was not sure how she knew him." This venireperson, however, during voir dire examination, clearly explained that this officer was a member of her church. The state's eleventh strike excluded a 40-year-old black female "who was a seamer (sic)." In explaining this strike, Ms. Brooks stated the following:
"My notes do not indicate any criminal history. I can only tell the Court that I knew she lived on Kelly Lane. I cannot tell the Court what significance that has at this time without my notes or Mr. Evans's notes. I cannot recall at this time any of the personal information that we had about [her] or why we struck her other than she was forty years of age. That's all I can tell the Court on Number 72."
The state exercised its twelfth strike to exclude a 46-year-old black female who was unemployed. At the conclusion of giving reasons *852 for the prosecution's strikes, Ms. Brooks explained, "With the notes that we do not have because the files have been lost, there may well could be other reasons, Your Honor, that we took into consideration for striking or not striking certain jurors."
On January 23, 1992, another hearing was held after this court's remand pursuant to the state's request for a hearing to present "the most accurate evidence on the issue of jury selection" by offering its reasons based on actual trial notes which, by this time, had been discovered. During this hearing and contrary to her assertion in the October 2 hearing, Ms. Brooks disclosed that the discovered files contained no notes belonging to Mr. Jimmy Evans, who, she again asserted, "was the lead trial counsel and [who] actually struck the [jury]," but her notes were available. Ms. Brooks further explained that, upon comparing her notes with her reasons given in the October hearing, she "found that [the reconstruction of reasons as given in the October hearing] was a good reconstruction" and that she "found more reasons to strike the [potential] jurors," so she asked to adopt each reason previously given "as now backed up by the notes" and to offer additional reasons. She stated that, according to her notes, an additional reason for the prosecution's exercise of its first, second, third, and fifth strikes was that the venirepersons were single; that its fourth strike was also exercised because the venireperson was single and in school at the time; and that its sixth strike was also exercised because the venireperson was single, unemployed, and "weak voiced."
After the October 2 hearing, the trial court held the following:
"After hearing and considering the legal argument and factual data presented in this hearing, which the record shows, the Court finds that the State has articulated clear, cogent, and sound reasons for its peremptory strikes, all being racially neutral. Thus, the Court finds that Bui has failed to make a case that convinces this Court that this is a case of discriminatory or disparate action by the State in using its peremptory strikes to remove black veniremembers from the petit jury that tried this case."
In the court's order issued after the January 23 hearing, the court again found that the prosecution did not violate Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), or Powers.
In reviewing these rulings by the trial court, we are presented with the very real and crucial question of whether we have any more evidence of the reasons for the prosecution's exercise of its strikes than those presented by Mr. Evans at trial, which are as follows:
"We struck those who we believed would acquit. Those strikes were not based not on race but on just our exercising our right to strike jurors we feel would be most favorable to acquit. On that grounds only."
During the remand proceedings, Ms. Brooks stated the following:
"Mr. Evans was lead counsel and he actually struck the jury. He is unable to be here. I did participate with him in that. I was present, I observed him strike, and we had the same information available to us at that time. He was lead counsel, however."
Mr. Evans did not appear at any of the remand hearings, and the trial court expressed its concern, as follows:
"[T]hen another problem I have, and I know Mr. Evans is busy and Ms. Brooks is presenting this matter, but Mr. Evans actually struck the jury, as Ms. Brooks said, and she assisted him. Now, the truth of the matter is Mr. Evans is not here and I can't listen to his comments and reasons, you see. That's another little problem I have."
The prosecution offered no response.
The record presents nothing for us to determine exactly whose specific reasons the trial court had before itthose that Ms. Brooks would have used had she struck the jury, or those that Mr. Evans did use in exercising the strikes. For example, at one point, Ms. Brooks, in speaking of a venireperson who served, stated the following: "I had no reason to strike him other than his age. When I had more young people than *853 strikes, I felt that was a plus...." (Emphasis added.) Subsequently, however, she told the court that, in deciding whether there was purposeful discrimination, it "must evaluate now Mr. Evans'[s] state of mind based on his demeanor and credibility." The record offers no evidence of Mr. Evans's state of mind except his "good faith" explanation, which is condemned by the Batson Court, 476 U.S. at 98, 106 S.Ct. at 1724 (wherein the Court stated that the prosecutor may not "rebut the defendant's case merely by denying that he had a discriminatory motive or `affirm[ing] [his] good faith in making individual selections'") (quoting Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972)). Without any indication that Ms. Brooks and Mr. Evans actually agreed on any specific reason for each strikerather than this court's relying on Ms. Brooks merely being present, observing, and having the same information available to herit is arguably impossible for us to consider Ms. Brooks's explanations to be the actual reasons Mr. Evans struck the nine blacks. (There is no evidence that the two even conferred.) See Scales v. State, 539 So.2d 1074, 1075 (Ala.1988) (wherein our supreme court noted that it "appreciate[s] that it is impossible to know what is in the mind of another person"). Thus, there is a reasonable argument that in answer to the question of what exactly were Mr. Evans's reasons for the prosecution's nine strikes, we may consider only the "good faith" explanation given by Mr. Evans at trial.
We consider the circumstances before us to be akin to the situation in Acres v. State, 548 So.2d 459, 470-74 (Ala.Cr.App.1987). Acres's cause, which was tried three years before Batson, was remanded for a Batson hearing. At that hearing, Mr. Evans testified that the records and notes that he had made at the time of jury selection, giving his reasons for his strikes, were no longer available; that he had no recollection of the reason for striking any venireperson; and that, if the documents in the prosecutor's present possession contained information about a venireperson such as a driving infraction or an arrest, there was a likelihood or probability that he had struck the venireperson for that reason, id. at 472. The trial court found that the prosecutor "was able to point to racially neutral factors that would have provided a basis for his peremptory strikes of prospective black jurors." Id. at 471 (emphasis added). However, this court found that, "[i]n essence, [the prosecutor] gave no reason for striking any of the black venirepersons." Id. at 472. We offered the following explanation: "The district attorney has given no specific reasons for challenging any juror. His explanations deal only with probabilities. Thus, we can only speculate as to his reasons, as he did." Id. at 473. The Montgomery County District Attorney's Office cannot circumvent our rejection of speculative or probable reasons in Acres by having a prosecutor who did not exercise the prosecution's strikes give his or her own reasons for those strikes.
We appreciate that nearly five years have lapsed since the prosecution knew positively that it would be required to come forth with reasons for its strikes. However, we cannot adopt the attorney general's argument that this lapse of time should be reason to diminish the prosecution's burden, especially concerning the absence of any explanation of the prosecutor who actually exercised the prosecution's strikes or, at the very least, a showing that Ms. Brooks knew the actual reasons Mr. Evans utilized in exercising the strikes. We are mindful of the following observation of our supreme court in Ex parte Branch, 526 So.2d 609, 625 (Ala.1987):
"We do not suggest that the additional time, as was given in this case, necessarily allowed the prosecutors in this case to present race-neutral reasons they did not have at the time the motion was made, but the allowance of additional time would present this opportunity, if a prosecutor were so inclined."
See also Ex parte Bird, 594 So.2d 676, 681 (Ala.1991) (wherein our supreme court recognized "a pattern in the use of peremptory strikes by the Montgomery County District Attorney's office").
However, even if we take Ms. Brooks's explanations as those actually contemplated by Mr. Evans in his striking, the prosecution still has not overcome the presumption of bias. We agree with the trial court's finding that Bui presented a prima facie case of discrimination. See Branch, 526 So.2d at *854 622-23. (While the prosecution asserted in the remand hearing that Bui did not present a prima facie case of discrimination, the attorney general abandoned that stance on appeal.)
Thus, we have remaining the question of whether the prosecution presented "a clear, specific, and legitimate reason for [each] challenge which relates to the particular case to be tried, and which is nondiscriminatory," id. at 623 (citing Batson, 476 U.S. at 97, 106 S.Ct. at 1723) (emphasis in original). The prosecution did not meet this burden. We need only look at the absence of any reason whatsoever for the prosecution's exercise of its eleventh strike.[4] In Ex parte Williams, 571 So.2d 987, 990 (Ala.1990), our supreme court addressed the prosecution's failure to provide any reason for one of its strikes of blacks, as follows:
"Williams's evidence that the State struck four of the five black venire members is sufficient evidence of discrimination to establish her prima facie case for discrimination. Branch, 526 So.2d at 622-23. With the prima facie case established, there is a presumption that the peremptory challenges were used to discriminate against black jurors, Branch, at 623; the State then has the burden of articulating a clear, specific, and legitimate reason for the challenge that relates to the particular case to be tried and that is nondiscriminatory. Branch, at 623. We do not determine whether the reasons given for striking Franklin, Daniel, and Jennings were sufficient to withstand Williams's Batson challenge; by not determining whether the reasons given were sufficient, we do not mean to imply either that they were or that they were not sufficient. The State provided no explanation whatsoever for its strike of Connor. Accordingly, the State failed to meet its burden necessary to rebut Williams's prima facie showing of discrimination. Branch, at 622-24. The trial court thus erred when it denied Williams's Batson motion. The judgment is due to be reversed and the cause remanded."
Pursuant to this holding, we are left with no alternative but to reverse the judgment and remand this cause for a new trial. We cannot embrace the attorney general's argument that the ruling of Williams "should not be followed mechanically here" on the argument that, at the time of this trial, "the prosecution had no reason to assume that it would be called upon to give reasons for its strikes of black persons."[5] As already noted, we appreciate the prosecution's dilemma of being required to explain its strikes nearly five years after its exercise of those strikes. However, our supreme court obviously considered the prosecutor's failure to give any reason for a particular strike to be a striking, fundamental, and basic flaw in the prosecution's rebuttal of the prima facie case of discrimination. We thus cannot consider that this passage of time is reason to ignore or diminish the United States Supreme Court's directive of Batson, which had been decided prior to Bui's trial, or our supreme court's directive of Williams. Cf. Batson, 476 U.S. at 95, 106 S.Ct. at 1722 (wherein the Court recognized that it "has declined to attribute to chance the absence of black citizens on a particular jury array where the selection mechanism is subject to abuse").
Accordingly, the judgment is reversed and this cause is remanded.
REVERSED AND REMANDED.
All Judges concur.
NOTES
[1] At the time of Bui's trial, Ms. Brooks was Deputy District Attorney and Mr. Jimmy Evans was the District Attorney; at the time of the remand hearings, Ms. Brooks held a position in the Office of the Alabama Attorney General, and Mr. Evans was the Attorney General.
[2] Our supreme court stated that "counsel for Bui challenged the State's use of 6 of its 13 strikes to remove blacks from the jury." 627 So.2d at 848. As the trial transcript reflects, defense counsel did note that six blacks were struck by the prosecution.
[3] This must have been recalled from memory since, according to Ms. Brooks, the notes from witnesses and employees were not available at this point.
[4] In explaining this strike, Ms. Brooks stated, "I cannot recall at this time any of the personal information that we had about [her] or why we struck her other than she was forty years of age." Neither party construed this comment to indicate that the state struck this venireperson because she was forty years old; both addressed this strike with the premise that no reason was offered by the prosecution. This is understandable from the prosecution's viewpoint, because the stance that she was excluded because of her age would alone have cast further serious doubt on the prosecution's explanation of young age for other strikes.
[5] We note that prior to voir dire of the venire and after granting Bui's motion to enjoin the prosecution from utilizing its peremptory challenges to systematically exclude blacks from the venire, the trial court cautioned the prosecution as follows: "[I]f there are reasons, I will hear those reasons later."