James Edmund McWilliams, Jr., was convicted by a Tuscaloosa County jury of three counts of capital murder and was sentenced to death. The Court of Criminal Appeals affirmed the conviction and sentence. See McWilliams v. State,640 So.2d 982 (Ala.Crim.App. 1991). This Court granted McWilliams's petition for the writ of certiorari. Rule 39(c), A.R.App.P.
In his petition to this Court, McWilliams presents 26 issues for review. He presented all but six of these issues to the Court of Criminal Appeals. That court issued a detailed and lengthy opinion, which provided a thorough treatment of each of the issues raised by McWilliams. We have thoroughly reviewed the record before us for error regarding the issues raised, as well as for plain error not raised.[1] Except as set out in Part I below, we find no error by the Court of Criminal Appeals in affirming the conviction and sentence.
 I.
McWilliams asserts that, in sentencing him to death, the trial court considered portions of victim impact statements wherein the victim's family expressed their characterizations and opinions about the crime, the defendant, and the appropriate sentence, and *Page 1017 
that the court erred in doing so. After the jury recommended that McWilliams be sentenced to death, the trial court conducted a separate sentencing hearing in accordance with §§ 13A-5-47 through -52, Ala. Code 1975, and sentenced McWilliams to death. Before the sentencing hearing, the trial court ordered the preparation of a presentence report. That report contained victim impact statements prepared by the victim's family. The statements contained two types of information: 1) statements about the victim and the impact of her death upon the family members, and 2) characterizations and opinions of the defendant, the crime, and the appropriate punishment.
In Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529,96 L.Ed.2d 440 (1987), the United States Supreme Court vacated a death sentence, holding that it violated the defendant'sEighth Amendment rights for the sentencer to consider victim impact statements in sentencing the defendant to death. The victim impact statements in that case contained the same types of information as were in the statements in the present case. InPayne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597,115 L.Ed.2d 720 (1991), the Supreme Court partially overruled Booth. The Court in Payne held that the defendant's Eighth Amendment rights were not violated by the trial court's consideration of statements regarding the victims and the impact of their deaths upon the family members. The victim impact statements in Payne
did not contain characterizations or opinions about the defendant, the crime, or the appropriate punishment. That portion of Booth that proscribed the trial court's consideration of that type of statement was, therefore, left intact by Payne.
We conclude that McWilliams's Eighth Amendment rights were violated if the trial judge in this case considered the portions of the victim impact statements wherein the victim's family members offered their characterizations or opinions of the defendant, the crime, or the appropriate punishment. Because the record does not reveal whether the trial judge considered these statements in imposing the death sentence on McWilliams, this case must be remanded to the trial court for further proceedings.
On remand, the trial judge is directed to determine and make a written finding stating whether, in imposing the sentence upon James McWilliams, he considered the portions of the presentence report wherein Patricia Reynolds's family members stated their characterizations of McWilliams, the murder of Reynolds, or the appropriate sentence for McWilliams. If, and only if, the trial judge finds that he did consider those portions of the presentence report, then he is hereby directed to vacate McWilliams's death sentence and to hold another sentencing hearing consistent with this opinion.
 II.
McWilliams asserts that the prosecution used its peremptory challenges to strike black veniremembers in a racially discriminatory manner, in violation of Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The venire from which McWilliams's jury was selected consisted of 68 members, of whom 17 were black. With 9 of its 16 peremptory strikes, the prosecution removed blacks from the venire. Ultimately, four blacks were selected to serve on the jury, and one black served as an alternate. The record shows that McWilliams did not object to the State's use of its peremptory strikes. Accordingly, no hearing was held pursuant to the procedure set out in Ex parte Branch, 526 So.2d 609 (Ala. 1987).
McWilliams argues that this case should be remanded for the trial court to afford the prosecution an opportunity to present race-neutral reasons for its strikes. We find, however, that McWilliams has not made a prima facie showing that the State used its peremptory strikes in violation ofBatson.
McWilliams cites several of the factors set out in Ex parteBranch that are relevant in determining whether a prima facie showing of discrimination has been made. Significantly, he argues that the State's use of its peremptory challenges evinces a pattern of strikes against black jurors on the venire. Ex parte Branch, 526 So.2d at 623. In support of this contention, McWilliams cites Bui v. State, 627 So.2d 849
(Ala.Crim.App. 1992), *Page 1018 rev'd, Ex parte Bui, 627 So.2d 855 (Ala. 1992). After Bui's conviction and sentence had been affirmed by the Court of Criminal Appeals and by this Court, the United States Supreme Court remanded the case for our further consideration in light of Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364,113 L.Ed.2d 411 (1991). Bui challenged the State's use of 6 of its 13 peremptory strikes to remove blacks from the venire.[2] The venire in that case consisted of either 13 or 15 qualified blacks.[3] Buiv. State, 627 So.2d 849 (Ala.Crim.App. 1992).
The Court of Criminal Appeals remanded the case to the trial court for a hearing with regard to the State's use of its peremptory challenges. Bui v. State, 627 So.2d 849. On remand, the trial court held that the State had not violatedBatson in the use of its peremptory strikes. On return to remand, the Court of Criminal Appeals held that the record did establish a discriminatory use of peremptory challenges by the State. Bui v. State, 627 So.2d 849. Holding that the trial court's conclusion was not clearly erroneous, we reversed the judgment of the Court of Criminal Appeals and remanded the case for the reinstatement of Bui's conviction and sentence. Exparte Bui, 627 So.2d 855.
McWilliams emphasizes that in the present case the State used its peremptory strikes to remove 53% of the qualified blacks from the venire, while in Bui the Court of Criminal Appeals remanded the case for a hearing although the State had struck only 46% percent of the qualified blacks from the venire. In Bui, 34% of the venire were blacks, and the jury consisted of only one black, or 8% of the empaneled jury. In the present case, however, 25% of the venire consisted of blacks, and 33% of the empaneled jury were blacks. In Harrellv. State, 571 So.2d 1270, 1271-72 (Ala. 1990), we stated:
 "[A] defendant cannot prove a prima facie case of purposeful discrimination solely from the fact that the prosecutor struck one or more blacks from his jury. A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created. Logically, if statistical evidence may be used to establish a prima facie case of discrimination, by showing discriminatory impact [citation omitted], then it should also be available to show the absence of a discriminatory purpose."
Other than by conclusory statements in his brief, McWilliams has made no attempt to show that the State exercised its peremptory strikes in violation of Batson, and our review of the record discloses no such violation. Accordingly, we find no error in the State's use of its peremptory challenges.
 III.
McWilliams next argues that in its closing argument the State made adverse comments upon McWilliams's choice not to testify. Specifically, McWilliams complains of the following portion of the district attorney's closing argument:
 "You know, one thing I do note that neither of the defense attorneys have talked about in the evidence or really dwelt on: they did not talk about that gun in that car right beside the man underneath the armrest, loaded, up in Ohio. And they did not talk about the bullets in his pocket; and they did not talk about the bullets down in the floorboard of the car — the ones he said he was biting on. He said he knew those were there, but he didn't know about the gun being there. Why did he have bullets in his pocket if he didn't know anything about any of this? There is no good reason, explanation, that indicates anything other than guilt in this case. There is no other explanation for it, and you have not heard an explanation; the *Page 1019 
evidence doesn't show any other explanation for it."
It is the law in Alabama that in all criminal prosecutions, the accused shall not be compelled to give evidence against himself. Ala. Const. 1901, Art. I, § 6. That privilege is also protected under § 12-21-220, which provides:
 "On the trial of all indictments, complaints or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel. If the district attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within 30 days from entry of the judgment."
The Fifth and Fourteenth Amendments of the United States Constitution are also violated when the prosecutor comments on the accused's silence. Griffin v. California, 380 U.S. 609,85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). "Alabama law clearly holds that '[w]here there is the possibility that a prosecutor's comment could be understood by the jury as reference to failure of the defendant to testify, Art. I, § 6 [Const. of Ala. of 1901] is violated.' " Ex parte Wilson,571 So.2d 1251, 1262 (Ala. 1990) (quoting Ex parte Tucker,454 So.2d 552, 553 (Ala. 1984)).
McWilliams asserts, and Judge Bowen agreed in his dissent, 640 So.2d at 1014, that the comment made by the prosecutor in this case is virtually indistinguishable from that made inWindsor v. State, 593 So.2d 87 (Ala.Crim.App. 1991), wherein the Court of Criminal Appeals reversed a capital murder conviction because of the argument of the prosecutor. The court in Windsor focused on the following portion of the prosecutor's argument:
 " 'And the strongest piece of circumstantial evidence that you have in this case, and [defense counsel] just glossed over this — State's Exhibit No. 31 [the victim's gun], it has been identified a number of ways in this case, but they can't explain this — they can't explain why this weapon was in the defendant's pocket when he was arrested. Can you offer me another reasonable hypothesis as to how that weapon got there?' "
593 So.2d at 90.
We note that while in Windsor the defendant made a proper objection to the prosecutor's argument and promptly moved for a mistrial, 593 So.2d at 90, the record in this case reveals that McWilliams did not object to the comment he now questions. In its opinion in this case, the Court of Criminal Appeals citedKuenzel v. State, 577 So.2d 474, 489 (Ala.Crim.App. 1990),aff'd, Ex parte Kuenzel, 577 So.2d 531 (Ala. 1991), cert.denied, Kuenzel v. Alabama, ___ U.S. ___, 112 S.Ct. 242,116 L.Ed.2d 197 (1991), where that court stated:
 " 'While this failure to object does not preclude review in a capital case, it does weigh against any claim of prejudice.' Ex parte Kennedy, 472 So.2d [1106,] at 1111 [(Ala. 1985)] (emphasis in [Kennedy]). 'This court has concluded that the failure to object to improper prosecutorial arguments . . . should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful.' Johnson v. Wainwright, 778 F.2d 623, 629 n. 6 (11th Cir. 1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). 'Plain error is error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings.' United States v. Butler, 792 F.2d 1528, 1535 (11th Cir.), cert. denied, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). See also Biddie v. State, 516 So.2d 837, 843 (Ala.Cr.App. 1986), reversed on other grounds, 516 So.2d 846
(Ala. 1987)."
The United States Court of Appeals for the Eleventh Circuit has held that a prosecutor's comments "on the failure of thedefense, as opposed to that of the defendant to counter or explain the testimony presented or evidence introduced is not an infringement of the defendant's Fifth Amendment privilege."Duncan v. Stynchcombe, 704 F.2d 1213, 1215-16 (11th Cir. 1983) (emphasis added). *Page 1020 
In the present case, the prosecutor commented that "neither of the defense attorneys have talked about" various pieces of physical evidence found in McWilliams's possession. This is clearly a comment on the failure of defense counsel to explain testimony or evidence.
McWilliams was arrested at a highway rest area in Ohio. The arresting officer testified that he recovered a handgun and some bullets from the car that McWilliams was driving. The officer further testified that when he asked about the bullets, McWilliams said that he had been chewing on them while driving. McWilliams first denied any knowledge of the handgun, but the officer testified that McWilliams later claimed that his uncle had been in the vehicle earlier and had had the handgun on his person at that time. The prosecutor's comment, therefore, was pointing out the failure of defense counsel to offer an explanation for the inconsistencies within the statements made by the defendant.Duncan, supra.
A prosecutor "may state or comment on proper inferences from the evidence and may draw conclusions from the evidence based upon his own reasoning." Harris v. State, 539 So.2d 1117,1123 (Ala.Crim.App. 1988) (quoting Sasser v. State,494 So.2d 857, 859-60 (Ala.Crim.App. 1986)). Moreover, "the prosecutor does have a right to point out to the jury that the State's evidence does stand uncontradicted." Ex parte Wilson, 571 So.2d at 1262. In United States v. Blackwood, 768 F.2d 131, 139
(7th Cir.), cert. denied, 474 U.S. 1020, 106 S.Ct. 569,88 L.Ed.2d 554 (1985), the United States Court of Appeals for the Seventh Circuit held that the prosecutor's reference to previous statements made by the defendant did not violate the defendant's rights under the Fifth Amendment. The Court of Criminal Appeals has held:
 " 'In evaluating a claim that the prosecutor's statement amounted to a comment on the defendant's failure to testify, "the facts and circumstances of each case must be carefully analyzed to determine whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." ' Brinks v. State, 500 So.2d 1311, 1314 (Ala.Crim.App. 1986) (quoting McKissick v. United States, 379 F.2d 754, 757 (5th Cir. 1967)."
Owen v. State, 586 So.2d 958, 960 (Ala.Crim.App. 1990), rev'don other grounds, Ex parte Owen, 586 So.2d 963 (Ala. 1991).
In Ex parte Williams, 461 So.2d 852, 854 (Ala. 1984), the prosecutor directly commented on an absence of testimony with regard to a specific circumstance regarding which only the defendant could have testified. In that case the Court of Criminal Appeals held:
 "In a case in which there has been a direct reference to a defendant's failure to testify and the trial court has not acted promptly to cure the comment, the conviction must be reversed. Whitt [v. State, 370 So.2d 736, 739 (Ala. 1979)]. In a case in which there has been only an indirect reference to a defendant's failure to testify, in order for the comment to constitute reversible error there must be a virtual identification of the defendant as the person who did not become a witness. Ex parte Yarber, 375 So.2d 1231, 1234
(Ala. 1979)."
461 So.2d at 854. The court in Windsor relied on the rationale of Ex parte Williams and reversed the judgment of the trial court because of the prosecutor's comment that "[the defense] can't explain why this weapon was in the defendant's pocket when he was arrested." 593 So.2d at 90. There was no evidence in that case that any other person could possibly offer an explanation.
The present case, however, presents a different set of circumstances. McWilliams stated that the handgun had been on his uncle's person earlier and that the vehicle he was driving belonged to his uncle. McWilliams's uncle could have testified regarding the presence of the handgun in his automobile, but he was not called to testify at all. Sonya McWilliams testified that she had traveled with McWilliams from Mobile to Tuscaloosa; however, she did not offer an explanation for the presence of the handgun in the vehicle. *Page 1021 
We find that the prosecutor's comments did not constitute a direct comment on McWilliams's failure to testify and that the comments did not identify McWilliams as the only possible person who could explain the matters in question. We conclude, therefore, that the content of the prosecutor's closing argument did not constitute "error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings." United States v. Butler, 792 F.2d 1528, 1535
(11th Cir. 1986), quoted in the excerpt from Kuenzel, supra.
 IV.
McWilliams asserts that his right to testify in his own defense was violated. The record shows that the following colloquy took place out of the hearing of the jury:
 "MR. FREEMAN [the district attorney]: Judge, I still want to point out that perhaps it might be good if the Defendant was asked if he personally agreed with the decision not to testify. I am just thinking down the road.
 "THE COURT: Well, Mr. McWilliams is present. Mr. McWilliams, do you understand you have the right to testify?
"MR. McWILLIAMS, THE DEFENDANT: Yes, sir.
 "THE COURT: And do you understand that you have the right not to testify?
"MR. McWILLIAMS, THE DEFENDANT: Yes, sir.
 "THE COURT: And it is your choice not to testify?
"MR. McWILLIAMS, THE DEFENDANT: NO ANSWER
 "MR. SOGOL [defense attorney]: Judge, again, I think that would come between Mr. McWilliams and myself, and I had just as soon not discuss it.
 "THE COURT: I agree. It was just out of an abundance of caution I asked that.
"MR. SOGOL: Yes, sir."
The right of a criminal defendant to testify at his own trial is fundamental and personal to the defendant.Nichols v. Butler, 953 F.2d 1550, 1552 (11th Cir. 1992); Rockv. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). "It is basic that every person has the right in all criminal prosecutions to be heard by himself and counsel, or either . . . to testify in his own behalf, if he elects to so do." Carterv. State, 424 So.2d 1336, 1340 (Ala.Crim.App. 1982) (citations omitted). A criminal defendant's decision not to testify in his own behalf must be made knowingly and voluntarily. Streeter v. State, 406 So.2d 1024
(Ala.Crim.App.), cert. denied, Ex parte Streeter, 406 So.2d 1029 (Ala. 1981), cert. denied, Streeter v. Alabama, 456 U.S. 932,102 S.Ct. 1984, 72 L.Ed.2d 450 (1982).
The record shows that McWilliams was fully aware that he had the right to testify in his own behalf and that he had the right not to testify. The trial court inquired whether McWilliams understood his rights in this regard; and McWilliams had ample opportunity to state his preference whether to testify or not. We find no evidence in the record that either the trial court or McWilliams's counsel interfered with his right to testify in his own behalf. Accordingly, we reject this claim.
 V.
McWilliams claims that his Fifth and Fourteenth Amendment rights against double jeopardy were violated in that, he says, he was convicted three times for the same crime.
McWilliams was initially charged under a four-count indictment. Count I of the indictment charged McWilliams with the murder of Patricia Reynolds made capital because it was committed during a robbery in the first degree while McWilliams was armed with a deadly weapon. § 13A-5-40(a)(2); and see § 13A-8-41(a)(1). Count II charged McWilliams with the murder of Patricia Reynolds made capital because it was committed during a robbery in the first degree in which McWilliams caused serious physical injury to Patricia Reynolds. § 13A-5-40(a)(2); and see § 13A-8-41(a)(2). Count III of the indictment charged McWilliams with the murder of Patricia Reynolds made capital because *Page 1022 
it was committed during a rape in the first degree. §13A-5-40(a)(3). Count IV of the indictment charged McWilliams with the murder of Patricia Reynolds made capital because it was committed during sodomy in the first degree. §13A-5-40(a)(3). Count IV of the indictment was dismissed on the State's motion at the conclusion of its case-in-chief. The jury found McWilliams guilty of the three remaining charges in the indictment, and the court sentenced him to death.
In King v. State, 574 So.2d 921 (Ala.Crim.App. 1990), the defendant was prosecuted for the rape of his four-year-old daughter. The four-count indictment charged King with two counts of rape (sexual intercourse with a girl under the age of 16 and sexual intercourse with a female by forcible compulsion), and two counts of sexual abuse (sexual contact with a girl under the age of 16 and sexual contact with a female by forcible compulsion). King was convicted on all four counts. He received two life terms for the rape counts and two 20-year terms for the sexual abuse counts. All of the sentences were to run concurrently. King, 574 So.2d at 922. Concluding that King's four convictions and multiple sentences for the same act violated his right against double jeopardy, the Court of Criminal Appeals remanded the case to the trial court with instructions to vacate three of the convictions and sentences.
King, however, is not apposite in the present case. In Gradyv. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548
(1990), the United States Supreme Court addressed the scope of the coverage of the Double Jeopardy Clause, as follows:
 "The Double Jeopardy Clause embodies three protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' North Carolina v. Pierce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). The Blockburger [v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932),] test was developed 'in the context of multiple punishments imposed in a single prosecution.' Garrett v. United States, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764
(1985)."
Grady, 495 U.S. at 516-17, 110 S.Ct. at 2090-91,109 L.Ed.2d at 561. This Court has also held that the Double Jeopardy Clause of the Alabama Constitution, Act. I, § 9, applies only in the three areas enumerated above. Ex parte Wright, 477 So.2d 492
(Ala. 1985).
In this case, McWilliams was not prosecuted for the same offense after an acquittal; nor was he prosecuted for the same offense after a conviction. That is, he was not prosecuted twice for the same offense. Moreover, while inKing the defendant received four separate prison sentences for the same offense, McWilliams has only been sentenced to die once and, indeed, can only be put to death once.
In the context of prescribing multiple punishments for the same offense, the United States Supreme Court has stated that "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366,103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).
In the present case, it is clear that the jury knew that it was convicting McWilliams of murdering Patricia Reynolds only once. It is also clear that the jury knew that McWilliams's crime was made capital because his victim was murdered in the course of one robbery and one rape. We conclude, therefore, that the sentencing court has not prescribed a greater punishment than the legislature intended. Even if McWilliams's rights against double jeopardy had been violated by the two convictions of robbery-murder, the convictions for one count of robbery-murder and one count of rape-murder would remain;[4] and either of these would be sufficient to support a death sentence. *Page 1023 
 VI.
McWilliams claims that the trial court erred in allowing the jury to separate without his consent. Ala. Code 1975, § 12-16-9(a), provides:
 "(a) If the accused and his counsel and also the prosecuting attorney, in any prosecution for a capital felony consent thereto in open court, the trial court in its discretion may permit the jury trying the case to separate during the pendency of the trial, whether the jury has retired or not."
McWilliams's jury was struck on August 19, 1986; but the jury was not seated and sworn until August 20, 1986. The members of the venire who were not selected to serve on the jury were dismissed on August 20, 1986. The record shows that the entire venire was allowed to separate on the night of August 19, 1986. Because § 12-16-9(a) applies only to the separation of the jury during the pendency of the trial, McWilliams's claim is without merit. See Stewart v. State,601 So.2d 491 (Ala.Crim.App. 1992); Bell v. State, 475 So.2d 601
(Ala.Crim.App. 1984), affd, 475 So.2d 609 (Ala.), cert.denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985).
 VII.
McWilliams claims that the trial court erred during the penalty phase in admitting certified copies of two prior criminal convictions and their associated sentences. The convictions were introduced to prove the aggravating circumstance that McWilliams had been "previously convicted of . . . a felony involving the use or threat of violence to the person." § 13A-5-49(2).
McWilliams first claims that the trial court erred in admitting the certificates containing the sentences imposed for the prior crimes. The jury was instructed to consider the convictions as aggravating circumstances; but the jury was not instructed to consider the sentences as additional aggravation. Finding no authority to support this claim, we hold that it is without merit.
McWilliams further claims that the trial court erred in admitting the evidence of those prior convictions because they were obtained after the offenses underlying the present conviction were committed. Section 13A-5-39(6) provides:
 "PREVIOUSLY CONVICTED AND PRIOR CRIMINAL ACTIVITY. As used in sections 13A-5-49(2) and 13A-5-51(1), these terms refer to events occurring before the date of the sentence hearing."
See also Ex parte Siebert, 555 So.2d 780, 784 (Ala. 1989),cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806
(1990). We conclude that this claim is without merit.
 VIII.
McWilliams asserts that the guilt-phase and penalty-phase jury instruction on reasonable doubt violated his right to due process. In his introductory remarks to the guilt-phase jury, the trial court said:
 "The burden of proof in a criminal case is beyond a reasonable doubt and to a moral certainty. Now, don't get confused by those things. Those are synonymous: whatever is beyond a reasonable doubt is also to a moral certainty. Jurists and courts have had trouble for years in defining reasonable doubt. And the easiest definitions I have been able to find are very similar, but they say this: a reasonable doubt is a doubt for which a reason can be given. A reasonable doubt is a doubt for which there is a reason. The doubt which would justify an acquittal must be an actual substantial doubt, not just a possible doubt. It can't be a doubt based on guesswork or speculation or a capricious doubt. A reasonable doubt is a fair doubt based upon reason and common sense and arising from the state of the evidence. A reasonable doubt may arise not only from the evidence produced, but also from the lack of evidence. The burden is on the prosecution to prove the Defendant guilty beyond a reasonable doubt of every essential element of the crime charged here."
Similarly, in its guilt-phase jury instruction, the trial court charged the jury as follows:
 "The state must prove by the evidence the Defendant's guilt beyond a reasonable doubt. The doubt which would justify an acquittal must be an actual substantial doubt, not just a possible doubt. A reasonable doubt is not a guess or a surmise, *Page 1024 
and it is not a capricious doubt. Before a conviction can be had in this case, the State must convince each of you beyond a reasonable doubt and to a moral certainty [of] the Defendant's guilt."
The penalty-phase jury was instructed to apply the same definition of reasonable doubt in determining whether the State had proven the existence of aggravating factors.
We first note that "beyond a reasonable doubt" and "to a moral certainty" are not exactly synonymous. In Ex parteBeavers, 598 So.2d 1320, 1321 (Ala. 1992), this Court approved a jury instruction that included the following:
 " 'And the expression "to a moral certainty" means practically the same thing as beyond a reasonable doubt. Because if you are convinced to a point where you no longer have a reasonable doubt, then you are convinced to a moral certainty."
(Emphasis added.) In other words, "moral certainty" is the state a jury reaches when it is convinced of the defendant's guilt beyond a reasonable doubt. We further note, however, that the trial court equated the two phrases only once, at the beginning of his introductory charge to the jury. Moreover, as set out below, the trial court's instruction, taken as a whole, does not suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. Accordingly, we hold that this error in the trial court's instruction is harmless. Rule 45, A.R.App.P.
In Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328,112 L.Ed.2d 339 (1990), the United States Supreme Court reversed a criminal conviction, holding that the trial court's instruction on reasonable doubt violated the defendant's due process rights. The trial court in that case had equated reasonable doubt with "actual substantial doubt" and had instructed the jury that a reasonable doubt "must be such doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof." Cagev. Louisiana, 498 U.S. at 40, 111 S.Ct. at 329,112 L.Ed.2d at 342 (quoting State v. Cage, 554 So.2d 39, 41 (La. 1989)). The trial court in Cage further instructed the jury that "What is required is not an absolute or mathematical certainty, but a moral certainty." Id. The United States Supreme Court concluded that "the words 'substantial' and 'grave' . . . suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard." Cage v. Louisiana, 498 U.S. at 40,111 S.Ct. at 329, 112 L.Ed.2d at 342. It then held that, considering the use of those words in conjunction with "moral certainty," a reasonable juror could have understood the instruction as allowing "a finding of guilt based on a degree of proof below that required by the Due Process Clause." Id.
(footnote omitted).
"In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole."Id. (citing Francis v. Franklin, 471 U.S. 307, 316,105 S.Ct. 1965, 1972, 85 L.Ed.2d 344 (1985)). Having compared the instructions at question in Cage and those in the present case, we find that the instruction given here does not contain the same infirmity as that in Cage. Specifically, the instruction in the present case does not require "a grave uncertainty" for acquittal.[5] Accordingly we reject this claim.
 CONCLUSION
Having searched the record and having considered each issue raised by McWilliams, we affirm that portion of the judgment of the Court of Criminal Appeals affirming the conviction. However, for the reasons set forth in Part I above, this case is remanded to the Court of Criminal Appeals with instructions for that Court to remand the case to the Circuit Court of Tuscaloosa County for further proceedings regarding the sentence, consistent with this opinion. *Page 1025 
AFFIRMED AS TO CONVICTION; REMANDED WITH INSTRUCTIONS AS TO SENTENCE.
HORNSBY, C.J., and ADAMS, HOUSTON and STEAGALL, JJ., concur.
[1] Our review of death penalty case allows us to address any plain error or defect found in the proceeding under review. This is so even if the error was not brought to the attention of the trial court. Rule 45, A.R.App.P.
[2] The opinion of the Court of Criminal Appeals in that case indicates that the State actually used 9 of its 13 strikes to remove blacks from the venire. However, Bui only challenged the removal of six blacks.
[3] According to the opinion of the Court of Criminal Appeals in that case, the record fails to show what happened to two blacks who were originally on the venire.
[4] Because each of those crimes contains an element not contained in the other, there could be no possible violation of the prohibition against double jeopardy. Blockburger, supra; Exparte Haney, 603 So.2d 412 (Ala. 1992); Ex parte Henderson,583 So.2d 305 (Ala. 1991); Jackson v. State, 516 So.2d 726
(Ala.Crim.App. 1985).
[5] In Gaskins v. McKellar, 500 U.S. 961, 111 S.Ct. 2277,114 L.Ed.2d 728 (1991), one of the issues presented in the petition was whether Cage announced a new rule. In his opinion respecting the denial of the petition, Justice Stevens indicated that the central flaw in the instruction at issue inCage was that the jury was instructed that a reasonable doubt "must be a doubt as would give rise to a grave uncertainty."Gaskins (Stevens, J., concurring in denial of certiorari).