Quang Ngoc Bui, a Vietnamese immigrant, was convicted on June 12, 1986, of the capital murder of his three young children; he was sentenced to death by electrocution. Bui's conviction and sentence were affirmed by the Court of Criminal Appeals on April 12, 1988. See Bui v. State, 551 So.2d 1094
(Ala.Crim.App. 1988), for a detailed statement of the appalling circumstances surrounding these murders. We affirmed the judgment of the Court of Criminal Appeals on July 14, 1989. Exparte Bui, 551 So.2d 1125 (Ala. 1989). On April 22, 1991, the United States Supreme Court vacated our judgment and remanded the case for our further consideration in light of Powers v.Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), which had not been decided when this case was tried. Bui v.Alabama, 449 U.S. 971, 111 S.Ct. 1613, 113 L.Ed.2d 712 (1991). We then remanded the case to the Court of Criminal Appeals on July 12, 1991, Ex parte Bui, 627 So.2d 848 (Ala. 1991), and the Court of Criminal Appeals remanded the case to the trial court for *Page 856 
a hearing with respect to the state's use of its peremptory strikes to remove black persons from the jury venire. Bui v.State, 627 So.2d 849 (Ala.Crim.App. 1991). After conducting several hearings, the trial court found that the prosecutors' use of 9 of the state's 13 peremptory strikes to remove black persons from the venire was not racially motivated. On return to remand, the Court of Criminal Appeals disagreed with the trial court's finding and reversed Bui's conviction, holding that the record established that the prosecutors had engaged in intentional discrimination by striking black persons from the venire solely on account of their race. See Bui v. State,627 So.2d 849 (Ala.Crim.App. 1992), for a detailed discussion of the reasons underlying the court's decision. The state then petitioned for a writ of certiorari, which we issued pursuant to Rule 39, A.R.App.P. We reverse and remand.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), the United States Supreme Court held that a prosecutor may not use the state's peremptory strikes to remove venirepersons of a defendant's race solely on the assumption that they would be biased toward the defendant merely because he is of the same race. Batson granted defendants the right to require the prosecutor to explain the reasons for the strikes if the defendant has established a prima facie case of discrimination. In Powers v. Ohio, 499 U.S. 400,111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Court broadened the scope ofBatson, holding that a defendant may object to race-based exclusions of venirepersons through peremptory strikes whether or not the defendant and the excluded person are of the same race. It was this decision that prompted the remand to the trial court in the present case for a Batson hearing.
On remand, the Honorable Charles Price, a respected black judge serving on the Montgomery County Circuit Court, ruled that Bui had established a prima facie case of discrimination. In doing so, however, Judge Price was clearly skeptical as to whether a prima facie case of discrimination had been shown. There were at least 13 black persons on the venire, and Judge Price noted that one black person served on the jury, that one was stricken by the defense, and that two were challenged by the state for cause. The following excerpts from the transcript reflect Judge Price's frustration with having to play what he called a "numbers game":
 "THE COURT: See, I don't go quite that far. Let me tell you something. I think this whole Batson situation has been taken totally out of focus. I understand what is going on, not in Bui, but in the Batson situation all over the country. Okay. The Court sent it back and I am going to have the hearing, but even before Batson was decided by the Supreme Court, since 1983 — well, since 1974 or '75 when I was a prosecutor and all the way through the time when I was a defense attorney, but particularly in 1983 when I became a circuit judge, I have been very, very observant of prosecutors' actions in striking black people and minorities from juries. I am very sensitive towards it, and I have made comments about it, and I have done some other things about it. I am keenly aware in every case and am very observant as to how those strikes are made and what kind of jury we end up with. I am on record with that. I am going to do what the court of appeals tells me to do, but I don't see a Batson issue in this case. I didn't see it at the time the case was tried. . . . If I thought there [were] some unfair dealings in striking black folks just for the sake of striking black folks from the jury, I would have granted a mistrial and started all over before Batson even came out. So I preceded Batson with this concern.
". . . .
 "[DEFENSE COUNSEL]: . . . Your Honor, the state at trial struck out of a total of 11 qualified prospective black jurors 9 black jurors. It's the defense's position that this constitutes a prima facie case. There are a variety of cases in Alabama which have found a prima facie case with fewer numbers.
"THE COURT: All right. . . .
 "[COUNSEL FOR THE STATE]: Your Honor, we would also like to note for the record that the defendant here himself struck one black juror. There was one *Page 857 
black juror who served on the jury. There were two who were successfully challenged for cause. The cases he's referred to are cases where there were black defendants. A lot of times there were black victims. This case is different. There is no racial element in this case at all, there is no racial dimension, there is no suggestion here of any reason why there should be discrimination. So we feel like these cases are not applicable here and they should have to prove more than just numbers in order to prove a prima facie case.
 "THE COURT: Well, that last case or one of the most recent cases from the Supreme Court is Powers v. Ohio with a white defendant, and the Supreme Court found in its wisdom to say that Bui, that the Batson standard applied in that case.
 "[COUNSEL FOR THE STATE]: Well, what they held, I believe, is that you don't have to be of the same race as the person who was struck. They did not hold it was automatically a prima facie case there. I think under Batson, he has to prove more than that, you know, just outside of that fact. Here we just have some numbers. We think he should have to prove more than that.
"THE COURT: All right. . . .
 "[DEFENSE COUNSEL]: Your Honor, in . . . a recent case out of the Alabama Supreme Court, there were 8 out of 10 black jurors struck. The defendant was white. In this case there are 9 out of 11.
 "THE COURT: What did the Court say in that case? Just the very fact that they struck 8 out of 10, that that was [a] prima facie showing?
 "[DEFENSE COUNSEL]: They remanded it for a showing of reasons.
"THE COURT: Oh, I understand that.
 "[DEFENSE COUNSEL]: Which clearly implies a prima facie case.
". . . .
 "THE COURT: Thank you. Let me just tell both of you all this: I am quite familiar with the law in the recent hearings dealing with the Batson issue. As one who served — I don't mind putting this in the record. As one who served as a prosecutor for about 7 years, there are various reasons why you strike a person. The fact that you strike 8 blacks out of 10 doesn't necessarily have to be for racial reasons, but since we are playing this numbers game, I am going to play it just like they tell me. Put that in the record. I am going to play the game because that's basically what we are playing, a numbers game, and that's fine. Now the state is going to have to show me why this case should not be sent back to the court of appeals saying it violated Batson. . . .
". . . .
 "THE COURT: . . . [A]s I told you, what we have gotten into in Batson is an area of the law and a situation time matter that is going to run for 20 years. If the numbers game is to be played, Judge Price is going to play it. I am going to play it like the appellate courts have told me to play it. Okay. . . .
". . . .
 "THE COURT: Well, I just have to do what the court of appeals tells me to do. . . . I have to do what the Court of Criminal Appeals of the State [of] Alabama has told me to do, and I am going to have the hearing and then I will just go ahead [and] rule that a prima facie case has been shown under the cases that deal with the Batson situation that exist at this time. I need the state to put on evidence to show whether or not the state met the Batson standard. I am not hesitant in stating my concern about this area of the law. We are going to be in a 20-year period of musical chairs with all of these cases, and that's fine. I mean, if the Supreme Court of the United States and if the appellate courts in the different states find within their wisdom to run these cases up and down the ladder, like we're juggling, Judge Price is going to sit here and do just what they tell me. That's what they told me to do and that's what I am going to do. Now, go forward."
After listening to the prosecutors' reasons for striking the nine black persons from the venire, Judge Price came to the following conclusion: *Page 858 
 "After hearing and considering the legal argument and the factual data presented in this hearing, which the record shows, the court finds that the state has articulated clear, cogent, and sound reasons for its peremptory strikes, all being racially neutral. Thus, the court finds that Bui has failed to make a case that convinces this Court that this is a case of discriminatory or disparate action by the state in using its peremptory strikes to remove black venire members from the petit jury that tried this case."
Against this backdrop, the Court of Criminal Appeals reversed Bui's conviction.
The Court of Criminal Appeals essentially held that the record did not support the trial court's finding that the reasons given by the prosecutor (Ellen Brooks) at the hearing on remand were the reasons used in exercising the strikes at the trial. The concern of the Court of Criminal Appeals arose from the fact that Ms. Brooks's co-counsel at the trial, Jimmy Evans, actually struck the jury. We agree with the state's position, however, that the record supports the trial court's finding. Again, the following excerpts from the transcript reflect what occurred during the hearing:
 "MS. BROOKS: Once we could not find the actual personal notes of the lawyers in this case, we went back through the transcript and read it at great length, making notes about what jurors were struck. We noted that there was voir dire, both written questions were submitted by the state and defense, and there was extensive voir dire covering pages 330 through 447 of the transcript, wherein the court and both sides were allowed to ask some questions. There was also an occupation strike list we had available. And we did have at our disposal, what I call for lack of a better term, criminal histories, which we ran on all of the jurors. I was able to go back to the district attorney's office and get the master of those records for that week. It's not the one that we had in court, but it is a duplicate of what we had in court. It's not everything that we had in court. For instance, we had witnesses and employees look at the juror list. We had personal notes from observations and comments that the jurors made and those kinds of things. Looking over the transcript and the information still available in the district attorney's office, what I did then was simply to compile that information by juror to help the court remember and see what happened on that occasion. As the record demonstrates from pages 449 through 453, Mr. Evans was lead counsel and he actually struck the jury. He is unable to be here. I did participate with him in that. I was present, I observed him strike, and we had the same information available to us at that time. He was lead counsel, however.
 "We struck primarily on the following four bases. The first were those with any criminal history. Anybody that had been arrested, according to any information we had, was struck. According to my notes, no one who actually served on the jury had any criminal history, to our knowledge. The second basis that we used was if they knew the defense attorney, the defendant, or any member of their family. To our knowledge, no one was left on the jury who did know the defense attorneys or the defendant. The third basis was employment. We were looking for people who were employed or who were not unemployed. There were a few people on the jury who were not presently employed. However, each and every one of those was either retired, having worked, or was a full-time student. The last general basis was age. We were looking for people who had some maturity, some experience in life, who were old enough perhaps to have children, since this involved the death of three children, who perhaps had had marital problems, since this apparently was triggered or involved the defense of a relationship between the defendant and his wife, and the defense we anticipated would bring out, and did bring out, some difficulties between the two of them. We were looking for people who had made decisions in life such as, you know, to get married, take a job, to make job decisions, to make decisions on how to raise their kids. People who had some maturity. Therefore, we made a list of the youngest people, and we attempted to strike based on the *Page 859 
youngest. However, there were some four or five who were on the jury who were not stricken who were of a relatively young age, and I would like to distinguish those at the appropriate time."
Although it expressed concern over Mr. Evans's absence from the hearings, the trial court could have reasonably inferred from Ms. Brooks's testimony that Ms. Brooks and Mr. Evans worked as a team in striking the jury and, thus, that the reasons given by Ms. Brooks for striking the black persons from the venire were the reasons underlying the state's use of its peremptory strikes at the trial. In Ex parte Branch, 526 So.2d 609 (Ala. 1987), we approved the Court of Criminal Appeals' use of a "clearly erroneous" standard for reviewing factual findings by the trial court in Batson proceedings. Applying that standard here, we cannot hold as clearly erroneous the trial court's finding that the reasons given by Ms. Brooks for exercising the state's peremptory strikes were the reasons underlying the state's use of its peremptory strikes at the trial.
The Court of Criminal Appeals also held that even if the trial court did not err in considering Ms. Brooks's explanations for the state's strikes, Batson nonetheless dictated that Bui's conviction be reversed because Ms. Brooks could not recall why she and Mr. Evans had stricken one of the black persons from the venire (the state's 11th strike). We disagree with this interpretation of Batson as applied to the facts of this case.
Recently, in Huntley v. State, 627 So.2d 1013 (Ala. 1992), this Court held that in reviewing allegations that the prosecutor exercised the state's peremptory strikes in a racially discriminatory manner, "the reviewing court's inquiry . . . shall not be restricted by the mutable and often overlapping boundaries inherent within a Batson-analysis framework, but, rather, shall focus solely upon the 'propriety of the ultimate finding of discrimination vel non.' " 627 So.2d at 1015, quoting United States v. Forbes, 816 F.2d 1006, 1010
(5th Cir. 1987), in turn quoting Merrill v. Southern MethodistUniversity, 806 F.2d 600, 605 n. 6 (5th Cir. 1986). In UnitedStates v. Forbes, the Fifth Circuit Court of Appeals, upholding the defendants' convictions, noted:
 "The Eleventh Circuit has observed, correctly we think, 'Failure by a prosecutor to explain every peremptory strike of black jurors is not necessarily fatal to the prosecutor's ability to rebut a prima facie case; likewise, explanation of most of the strikes on nonracial grounds does not necessarily' satisfy his burden. United States v. David, 803 F.2d 1567, 1571 (11th Cir. 1986).
 "In this case, the prosecutor's third strike, though unexplained, seems unlikely to have been the result of intentional discrimination. The confluence of the following facts leads to this conclusion: (1) the black/white ratio on the jury mirrored that of the venire; (2) the prosecutor adequately explained two strikes; (3) the prosecutor did not use all his strikes; (4) there were two blacks left on the jury. Although the existence of fewer than all or most of these circumstances might be insufficient to prevent or rebut an inference of intentional discrimination, see Flemming v. Kemp, 794 F.2d 1478, 1483 (11th Cir. 1986) ('[N]othing in Batson compels the district court's conclusion that constitutional guarantees are never abridged if all black jurors but one or two are struck because of their race.'), the Court is mindful of Justice Holmes's comment in a different context that 'we cannot let the fagot be destroyed by taking up each item . . . separately and breaking the stick.' Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 346, 70 L.Ed. 678 (1926). There is significance, perhaps determinative significance, in the coexistence of these facts."
816 F.2d at 1011 n. 7.
In Ex parte Demunn, 627 So.2d 1010 (Ala. 1992) (released the same day as Huntley v. State), we applied the rationale ofUnited States v. Forbes and United States v. David in affirming Demunn's conviction. In Demunn, the prosecutor gave race-neutral reasons for striking two black persons from the venire, but he could not recall why he had stricken the third. Even so, after carefully considering all of the circumstances surrounding the selection of the jury, we concluded that the record supported the inference *Page 860 
that the prosecutor had not exercised any of the state's peremptory strikes in a racially discriminatory manner, and we affirmed the judgment of the Court of Criminal Appeals, on the authority of Huntley.
If all the facts in the present case are carefully considered (i.e., that Bui, who is Vietnamese, was tried for these murders before the United States Supreme Court's decision inPowers; that there was almost a five-year delay in requiring the prosecutors in this case to come forth with the reasons for striking blacks from the venire; that race-neutral reasons were given for striking eight of the nine black persons removed from the venire by the state; that this case does not involve a black defendant or a black victim; that one black person served on the jury (the prosecutors had the opportunity to strike this black person also, but did not); that the defense struck one black person from the venire; and that one of the most distinguished black circuit judges in this state was not convinced that the state's strikes were racially motivated), we cannot hold that the trial court's finding of an absence of racial discrimination with respect to the state's 11th strike was clearly erroneous. See Ex parte Branch.
We note that Ex parte Williams, 571 So.2d 987 (Ala. 1990), relied on by the Court of Criminal Appeals, is distinguishable on its facts. In that case the defendant was black and the prosecutor struck four out of the five black persons on the venire. We held that sufficient to make out a prima facie case of racial discrimination. The prosecutor, however, made no attempt whatever to explain one of the state's four strikes, even though he was asked to do so immediately after the jury had been impaneled and sworn. We held that, under the circumstances, the prosecutor had failed to rebut the defendant's prima facie case of discrimination with respect to at least one of the black persons stricken from the venire. As previously stated, the present case does not involve a black defendant, and the prosecutor, who was asked to reconstruct the events of the trial almost five years after the fact, was forthright in conceding that she could not remember why the state had exercised one of its strikes as it did to remove a black person from the venire.
For the foregoing reasons, the judgment of the Court of Criminal Appeals is reversed and the case is remanded for the reinstatement of Bui's conviction and sentence.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, STEAGALL and INGRAM, JJ., concur.
ADAMS, J., concurs specially.