I dissent from the opinion of the majority reversing the appellant's conviction on the ground that the prosecutor failed to give a race-neutral reason for striking veniremember J.M. from the jury venire.
Thirteen of the 63 members, approximately 20%, of the jury venire were black. The prosecution used six of its 17 peremptory strikes against blacks. Apparently, there were four black jurors, 33%, on the jury that tried and convicted the appellant. In determining " 'the propriety of the ultimate finding of discrimination vel non,' " Huntley v. State,627 So.2d 1013, 1016 (Ala. 1992), this is a significant (although not controlling) factor to consider. Compare Ex parte Bird,594 So.2d 676, 680 (Ala. 1991) ("To be sure, the fact that a larger percentage of black veniremembers eventually is seated on the jury raises less suspicion than if a smaller representation is seated and affords less support for a prima facie case of discrimination").
Despite this Court's statements in Walker v. State,611 So.2d 1133 (Ala.Cr.App. 1992), I find that, under the facts of thiscase, the prosecutor's reason was sufficient. In Hernandez v.New York, 500 U.S. 352, 360, *Page 136 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991), the Supreme Court of the United States stated:
 "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."
This Court has previously upheld as race neutral the reasons given by the prosecutor for striking black members of the venire that were based upon information obtained from law enforcement officers. Where this information concerns the veniremember's involvement with crime, an explanation based upon this knowledge has been upheld. King v. State,612 So.2d 1333 (Ala.Cr.App. 1992) (strikes of veniremembers on basis of criminal histories upheld where information was obtained from a "computer printout from the Alabama Criminal Justice Information Center and the National Crime Information Center");Wilsher v. State, 611 So.2d 1175, 1181 (Ala.Cr.App. 1992) (strike of veniremember on basis of involvement in crime upheld where "a member of the district attorney's office had checked the jury list through 'the State Unified Judicial System computer terminal' and had made a note 'next to [the veniremember's] name indicating that he had been charged with assault, third degree, and . . . DOC' "); Sistrunk v. State,599 So.2d 87, 88-89 (Ala.Cr.App. 1992) (strike of veniremember on basis of involvement in crime upheld where information was received from a member of the local police department); McLeodv. State, 581 So.2d 1144, 1154-55 (Ala.Cr.App. 1990) (strike of veniremember on basis of involvement in crime upheld where "a deputy sheriff had informed the district attorney's office that this person was 'dealing in drugs, but he just hasn't been caught yet' "). In Robinson v. State, 560 So.2d 1130, 1133
(Ala.Cr.App. 1989), this Court issued the following warning:
 "We caution that a prosecutor's exercise of a peremptory challenge of a black venireperson based solely upon the recommendation of a law enforcement officer is highly suspect. However, the underlying basis for the recommendation may supply a racially neutral reason for the exercise of a peremptory challenge."
The absence of questions or meaningful questions on voir dire has been held to indicate that an explanation for a strike was merely a sham or a pretext. See, e.g., Ex parte Bird, 594 So.2d at 683, 685 (prosecutor did not inquire on voir dire about one veniremember's suspected relationship with a former defendant or about another veniremember's apparent nonuse of college degree); Hemphill v. State, 610 So.2d 413 (Ala.Cr.App. 1992) (prosecutor did not inquire on voir dire about veniremember's suspected acquaintance with defense counsel). However, the challenged party is not required "to engage in extensive, and potentially alienating, voir dire" with regard to a veniremember's acquaintance with the accused or witnesses for the accused. See Wilsher v. State, 611 So.2d 1175 (Ala.Cr.App. 1992).
Explanations that are contradicted by the actual voir dire may also be deemed deficient. See, e.g., Ex parte Yelder,630 So.2d 107, 110 (Ala. 1992) (prosecutor's explanation that he struck veniremember because he " 'couldn't understand a word she said,' [due to] 'the way she put her sentences together' " was belied by veniremember's actual responses on voir dire);Jackson v. State, 594 So.2d 1289, 1293-94 (Ala.Cr.App. 1991) (prosecutor's explanation that the veniremember was struck "because 'it was shown through voir dire the she was acquainted with and lived close to an individual' " that the State was attempting to extradite, was discredited by record of voir dire that showed the veniremember knew the individual "only minimally and that her acquaintanceship with him occurred a number of years previous to th[e] trial").
The State is not "required to produce all notes, reports, or other documents that it uses in exercising its peremptory challenges." Ex parte Thomas, 601 So.2d 56, 58 (Ala. 1992).
A veniremember's involvement in or connection with criminal activity may serve as a race-neutral reason for the strike of that veniremember. E.g., Wilsher v. State, 611 So.2d 1175, 1181
(Ala.Cr.App. 1992) (one veniremember had been "charged with or convicted of crimes in the past"; another *Page 137 
veniremember "had been charged with assault, third degree, and . . . DOC"); Whittlesey v. State, 586 So.2d 31, 32 (Ala.Cr.App. 1991) (veniremember had been investigated for rape although grand jury ultimately "no billed" the case); Avery v. State,545 So.2d 123, 126 (Ala.Cr.App. 1988) (veniremember was a "defendant in a pending criminal case"). "This connection with or suspicion of criminal activity includes the juror in question, as well as close relatives and friends of the juror."Heard v. State, 584 So.2d 556, 560 (Ala.Cr.App. 1991); accordDavis v. State, 555 So.2d 309, 314 (Ala.Cr.App. 1989); Baker v.State, 555 So.2d 273, 276 (Ala.Cr.App. 1989). "[A] prosecutor may use peremptory challenges when he cannot formulate and sustain a legal objection to a juror, and yet has reason to question the impartiality of a juror due to his habits and associations." United States v. Vaccaro, 816 F.2d 443, 457 (9th Cir.), cert. denied, 484 U.S. 928, 108 S.Ct. 295,98 L.Ed.2d 255 (1987).
The standard for reviewing factual findings by the trial court in Batson proceedings is set out in Ex parte Branch,526 So.2d 609, 625 (Ala. 1987): An appellate court " 'may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous.' " (Emphasis added.) This standard was most recently approved inBui v. State, 627 So.2d 855 (Ala. 1992). Furthermore, in Bui, our Alabama Supreme Court held that a prosecutor's failure to explain one peremptory strike of a black veniremember was not fatal. "[I]n reviewing allegations that the prosecutor exercised the state's peremptory strikes in a racially discriminatory manner, 'the reviewing court's inquiry . . . shall not be restricted by the mutable and often overlapping boundaries inherent within a Batson-analysis framework, but, rather, shall focus solely upon the "propriety of the ultimate finding of discrimination vel non." ' " Bui, 627 So.2d at 859 (quoting Huntley v. State, 627 So.2d 1013 (Ala. 1992)).
For these reasons, I dissent.