On Remand from the United States Supreme Court
STUART, Justice.
On July 22, 2016, the United States Supreme Court vacated this Court’s judgment in Ex parte Floyd, 191 So.3d 147 (Ala. 2015)(“Ex parte Floyd II”), and remanded the case for further consideration in light of that Court’s decision in Foster v. Chatman, 578 U.S.—, 136 S.Ct. 1737, 195 L.Ed.2d 1 (2016).
This Court provided the following facts and procedural history in Ex parte Floyd II:
“In 2005 Floyd was convicted of the murder of Waylon Crawford. The murder was made capital because it was committed during a robbery, see § 13A- *2 5-40(a)(2), Ala. Code 1975. Floyd was sentenced to death. In selecting the jury for ■ Floyd’s case, the prosecutor and Floyd’s counsel exercised a total of 36 peremptory challenges. The State used its 18 challenges to remove 10 of 11 African-rAmerican veniremembers and 12 of 18 female veniremembers. Floyd’s counsel removed one African-American and seven female veniremembers. The jury consisted of six white male jurors; six white female jurors, two alternate white male jurors and one alternate African-American female juror. Floyd did not object to the jury based on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)(prohibiting racial discrimination in jury selection), or J.E.B. v. Alabama, 511 U.S. 127, 114 act. 1419, 128 L.Ed.2d 89 (1994)(pro-hibitmg gender discrimination in jury selection).
"On direct appeal, the Court of Criminal Appeals held that the record indicated that the prosecutor’s use of his peremptory challenges created a prima facie case of discrimination under both Batson and J.E.B, That court remanded the case for the trial court to conduct a Batson/J.E.B. hearing. Floyd v. State, 190 So.3d 940 (Ala. Crim. App. 2007).
“On remand, the trial court conducted a hearing and required the prosecutor, Gary Maxwell,2 to provide explanations for the exercised peremptory challenges. Before providing explanations for his peremptory challenges, the prosecutor explained his general practice in selecting a jury for a capital case:
“Tn a capital murder case where voir dire is extensive, and ordinarily the process lasts a day or longer, I try-to rate each and every juror initially on gut reaction. If you will look at State’s Exhibit. 1 there, in black outside of a lot of the juror’s names, I will write “Okay.” I will write just a dash for a minus. I might write a plus, being—minuses are bad gut reaction, pluses are a good gut reaction. Okay is just okay. All right.
“ ‘Also, in doing so—I do that when the clerk is calling the names of the jurors and asking them to stand. Now, also, as is the Court’s practice—when I say the Court, the list that we have, I will put a “B” outside of the names of those who are black. I do that not only from the appearance in court but from the jury list that’s propounded by the clerk’s office.8

U i

“ T have done this sanie procedure, the initial gut reaction rating system, for over 30 years. It’s proven to be pretty accurate, I think. Then as questioning proceeds—I adjust those ratings based on responses or lack of responses to the questions, questions the Court asks, questions the State asks, and the questions that the defendant propounds as to whether Í feel 'they would favor the State' or the defense, on their demeanor, the way they answer the questions, and not just the answer to the questions, the answer or again their failure to respond.
“ ‘Now, ... I do that second rating system basically in red. I may go back, I may change a minus to a plus, I may change a plus to a minus.
“‘Ultimately, I try to strike those most likely to lean towards the defense, not on race. I consider such factors as their age, their place of employment or lack of employment, their physical 'ability based on appearance, and/or responses to the questions that the Court propounds or the attorneys propound or on:their failure to respond to questions. If they ap *3 pear to be having a hard time understanding the Court’s instructions or questions or those questions of the attorneys, I take that into consideration. If they do not pay attention, if they daydream, act as. if they are bored or just don’t care, I take that into consideration in this second rating system.
“ ‘In my rating system, for example, Juror [no. 30/]J.B.,4 who was struck by the defense, I considered to be an excellent juror for the State. And I think you can see that on my list out there, that there is a plus beside [Juror no. 30/J.B.’s] name.
“‘The State seeks jurors who are stable members of the community and due to the complexity of a capital murder case, we prefer jurors who have had jury experience and who have rendered a guilty, verdict in the past. We prefer jurors who have jobs or education that requires concentration and attention to detail and also analysis. .
“ ‘A juror’s demeanor or body language, his lack of eye contact with attorneys when they are asking questions can be a factor especially when he appears disinterested or shows more animosity towards the prosecution or law enforcement.
“ ‘So that’s just a basic background of what I do in preparation for striking the jury.’
“After explaining his methodology for selecting a jury, the prosecutor offered the following reasons for his exercised peremptory strikes of African-Americans and females:
“Prospective juror no. 28/P.B.: The prosecutor stated that he struck P.B., an African-American female, because P.B. had 32 bad-check cases, her probation had been revoked, and she was in the same age range as Floyd.
“Prospective juror no. 43/J.B.: The prosecutor stated that he struck J.B., an African-American male, because J.B. had twb convictions for harassment and had approximately 12 traffic tickets with the City of Dothan.
“Prospective juror no. 59/M.C.: The prosecutor stated that,he struck M.C., an African-American female, because M.C. initially indicated that, she could not vote for the death penalty and was personally opposed to capital punishment, and because she vacillated when questioned by the trial court.
“Prospective juror no'. 38/K.B.: The prosecutor stated that hé struck K.B., an African-American male, because K.B. had been convicted of disorderly conduct, because he knew a potential witness who was rumored to' have been involved in the commission of the offense charged, and because a member of law enforcement had indicated that he would be a bad juror for the State,
“Prospective juror no.' 46/T.C.: The prosecutor stated that he struck T.C., an African-American female, because T.O. had six convictions, and her brother had felony convictions, because during voir dire she questioned the veracity of testimony from members of -law enforcement, and because of her familiarity with members of the district attorney’s office as a result of that office’s prosecution of her and her brother.
“Prospective juror no. 57/A.C,: The prosecutor stated that he struck.A.0., an African-American female, because A.C. had been convicted of theft and negotiating worthless negotiable instruments.
*4 “Prospective .juror no. 60/L.C.: The prosecutor stated that he struck L.C., an African-American female, because he believed that L.C. was ‘too familiar with everybody involved’ in the case because she knew the defense attorneys, members of the district attorney’s office, and the forensic pathologist who performed the autopsy on the victim. He further explained that he believed L.O.’s expressed religious beliefs would impact her ability to sit in judgment of the accused.
“Prospective juror no. 19/D.B.: The prosecutor stated that he struck D.B., an African-American female, because she was inattentive during voir dire. The prosecutor further stated that D.B. failed to make eye contact with members of the prosecution team, but at times during voir dire nodded in agreement with defense counsel.
“Prospective juror no. 58/I.C.: The prosecutor stated that he struck I.C., an African-American female, because I.C. did not respond to any questions during voir dire and the prosecution did not know anything about her.
“Prospective juror no. 51/B.C.: The prosecutor stated that he struck R.C., an African-American female who ultimately served as an alternate juror, because R.C. was 77 years of age and he had concerns, based on her demeanor during voir dire and the length and complexity of the case, that she would be able to serve as a juror.
“Prospective juror no. 5/T.M.A: The prosecutor stated that he struck T.M.A., a Caucasian female, because of her age. He further stated that, although he could not provide a specific reason, his initial impression of T.M.A. was that she would not be a good juror for the State and because of ‘the age part.’
“Prospective juror no. 23/R.B.: The prosecutor stated that he struck R.B., a Caucasian female, because his initial impression of R.B. was that she would not be a strong juror for the State and she did not respond to any questions during voir dire.
“Prospective juror no. 35/S.B.: The prosecutor stated that he struck S.B., a Caucasian female, because, although his initial impression was that she would be an ‘okay’ juror for the State, S.B. did not respond to any questions during voir dire and appeared to be close to Floyd’s age.
“Prospective juror no. 70/K.D.: The prosecutor stated that he struck K.D., a Caucasian female, because K.D. was approximately the same age as Floyd.
“The prosecutor further stated that, based on his notes and rating system, he had determined that prospective jurors no. 8/M.W.A., no. 32/L.J.B., and no. 42/ R.S.B, Caucasian females who ultimately served on the jury, would be good jurors for the State and that prospective jurors no. 18/K.P.B. and no. 62/M.D., Caucasian females, and prospective juror no. 30/ J.B., an African-American female, each of whom was struck by the defense, would have also been good jurors for the State.
“The prosecutor explained that, during the selection process, he noticed that the defense was using its peremptory strikes to remove veniremembers who were not similar in age to Floyd. He stated that, after he had removed veniremembers that he believed would not be good jurors for the State, he challenged veniremembers in the age group the defense was trying to seat on the jury, i.e., those similar in age to Floyd.
*5 “The prosecutor offered into evidence his strike list that provided the names and numbers of the veniremembers, upon which he had made notations about each of the veniremembers; a list showing each veniremember’s prior jury service and any criminal charges; and the strike list that contained information about the veniremembers, including race, sex, occupation, etc., and upon which members of law enforcement had made notations about various venire-members and whether those venire-members would be good jurors for the State.
“To rebut the prosecutor’s reasons and to show that the prosecutor engaged in actual, purposeful discrimination, Floyd argued that the reasons offered by the prosecutor for his strikes were pretextual and a sham because, he said, the Houston County district attorney’s office had in the past engaged in discrimination during the jury-selection process. In support of his argument, Floyd named five cases in which convictions from the Houston Circuit Court had been reversed based on the State’s having exercised its peremptory challenges in a discriminatory manner.5 He further argued that, although the prosecutor claimed that a number of the removed veniremembers or their family members had criminal convictions, many of those convictions were not in the record and/or were unavailable for verification by the defense; that the prosecutor failed to ask follow-up questions during voir dire of veniremembers who had been struck to associate the reason provided to this case; that the prosecutor’s exercise of his peremptory strikes based on the race-neutral reason of age was disingenuous because the prosecutor used age as a reason to strike venire-members ranging from age 28 years old to 77 years old; and that, although the prosecutor stated that he struck African-American veniremembers based on traffic tickets and opinions they had regarding the death penalty, the prosecutor did not strike two similarly situated Caucasian veniremembers.
“In support of his argument, Floyd submitted a legal memorandum listing various cases in Houston County involving Batson objections, including five cases in which an appellate court had reversed convictions based on a Batson violation; a copy of defense counsel’s strike list; and a strike list providing additional information about the various veniremembers, including date of birth, sex, race, occupation, etc.
“After the hearing, the trial court en-' tered a written order finding that the prosecutor had proffered race- and gender-neutral reasons for exercising his peremptory strikes.
“On return to remand, the Court of Criminal Appeals upheld the trial court’s finding that the State had provided race- and gender-neutral reasons for its use of its peremptory strikes, considered the other issues presented on direct appeal, and affirmed Floyd’s conviction and sentence. Floyd v. State, 190 So.3d 940 (Ala. Crim. App. 2007) (opinion on return to remand).
“On certiorari review, this Court held that on remand the trial court had failed to comply with the order of the Court of Criminal Appeals that it provide specific findings concerning the reasons proffered by the prosecutor for striking African-American and/or female venire-members and that the Court of Criminal Appeals had erred in assuming the role of the trial court and finding that the State’s reasons for striking prospective jurors no. 5/T.M.A. and no. 58/I.C. were nondiseriminatory. Ex parte Floyd, 190 So.3d 972, 978 (Ala. 2012). This Court *6 reversed the judgment of the. Court of Criminal Appeals and .remanded the case for that court to remand the case with directions for the trial court
“ ‘to make necessary findings of fact and conclusions of law on the following issues: whether the State’s offered reasons for striking the African-.American jurors it struck were race neutral; ..whether the State’s offered reasons for striking the female jurors it struck were gender neutral; and “whether the defendant has carried his burden of proving purposeful discrimination.” ’
“Pursuant to this Court’s order, the Court of Criminal Appeals remanded the case with instructions that the trial court make the necessary findings of fact and conclusions of law. Floyd v. State, 190 So.3d 987 (Ala. Crim. App. 2012). The trial court on second remand entered an order, making specific findings of fact with regard to the State’s proffered reasons for striking African-American and female veniremembers and finding that Floyd had not demonstrated that the prosecutor had engaged in actual, purposeful discrimination on the basis of race or gender during the jury-selection process. The trial court rejected Floyd’s claims that the prosecutor had violated Batson and J.E.B. during the jury-selection process and found that the prosecutor had proffered race- and gender-neutral reasons for his peremptory strikes and that Floyd had- not satisfied ,his . burden of proving that the prosecutor’s reasons had been pretextual or sham or that the prosecutor had engaged in actual, purposeful discrimination during the jury-selection process. .
“On return .to second remand, the Court of Criminal Appeals affirmed Floyd’s conviction and sentence, holding that the trial court’s judgment was not clearly erroneous because the record supported the .trial court’s conclusion that the prosecutor: had presented facially race- and gender-neutral reasons for his strikes, that the prosecutor’s reasons were not pretextual or sham, and that Floyd had not satisfied his burden of proving that the prosecutor engaged in actual, purposeful discrimination against African-American and female venire-members during the- jury-selection process. Floyd v. State, 190 So.3d 987, 990 (Ala. Crim. App. 2012) (opinion on return to second remand).
[[Image here]]
“2Maxwell stated that he selected the jury for the State with the exception of one juror, who, although he had reservations about her serving in light of her responses to questions about capital murder, the district attorney directed not be removed by a State peremptory challenge.
“3The record indicates that the court provided at least three types of strike lists for the State and the defense to use during jury selection. One strike list provided each veniremember’s ■ name with an assigned juror number; another strike list included each veniremember’s name, juror number, date of birth, sex, race, and address; and a third strike list provided each veniremember’s name, juror number, date of birth, sex, race, occupation, employer, partial address, spouse’s name, and spouse’s employer.
“4The State refers to prospective jurors using initials, e.g., ‘Juror J.B.’; Floyd uses numbers, e.g., ‘Juror no. 30.’ For purposes of this opinion, the first time a prospective juror is referenced in a discussion, we will identify the juror by both number and initials. Thereafter, we will refer to that juror using initials.
“5Floyd did not argue that Maxwell had selected the juries for the State in *7 any of the cases in which the defendant’s conviction had been reversed."
Ex parte Floyd II, 191 So.3d at 151-55.
Floyd petitioned this Court for certiorari review of the Court of Criminal Appeals’ decision on return to second remand. This Court granted certiorari review to consider, among other grounds, “whether the Court of Criminal Appeals properly upheld the trial court’s denial of Floyd’s Batson [v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),] and J.E.B. [v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994),] claims.” Ex parte Floyd II, 191 So.3d at 156.
After thoroughly examining the record, this Court, applying a de.novo standard of review, stated:
“Floyd contends that the judgment of the Court of Criminal Appeals upholding the trial court’s finding that the State’s reasons for striking I.C. and T.M.A. were race- and gender-neutral and that he did not satisfy his burden of proving that the prosecutor engaged in actual, purposeful discrimination during the jury-selection process conflicts with Bat-son and J.E.B.
“Floyd’s contention that the trial court erred in not finding a Batson or J.E.B. violation focuses on the second and third step in a Batson/J.E.B, inquiry. In the second step of the inquiry, the party against whom the prima fa'cie case has been established, • i.e., the nonmoving party, has the burden of proving that its reasons for its peremptory challenges were race or gender neutral. Ex parte Branch, 526 So.2d 609, 623 (Ala. 1987). The nonmoving party must provide ‘a clear, specific, and legitimate reason for the challenge which relates to the particular case to be tried, and which is nondiscriminatory.’ Ex parte Branch, 526 So.2d at 623. The nonmoving party’s reason, however, does not have to equal the reason for a strike for cause; rather, the nonmoving party’s explanation must be facially valid. Ex parte Branch, 526 So.2d at 623.
“ ‘Within the context of Batson, a “race-neutral” explanation “means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the .facial validity of the prosecutor’s explanation. Unless a discriminatory intent is inherent in the prosecutor’s explanation, the reasons offered will be deemed race neutral.” Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). “In evaluating the race-neutrality of an attorney’s explanation, a court must .determine whether, assuming-the .proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law.” Id. “[Evaluation of the prosecutor’s state of mind based on demeanor and credibility lies ‘peculiarly within the trial judge’s province,’” Hernandez, 500 U.S. at 365, 111 S.Ct. at 1969.’
“Allen v. State, 659 So.2d 135, 147 (Ala. Crim. App. 1994).
“After the trial court determines that the nonmoving party has provided facially valid race- and gender-neutral reasons for its peremptory challenges, the burden then shifts to the moving party to prove that the nonmoving party has engaged in actual, purposeful discrimination. During this;third step of the Batson/J.E.B. inquiry, the trial court evaluates the persuasiveness of the non-moving party’s reasons to determine whether the nonmoving party has engaged in, purposeful, discrimination. Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834, (1995). The trial court’s determination of the moving *8 party’s showing of intent to discriminate is ‘a pure issue of fact subject to review under a deferential standard.’ Hernandez v. New York, 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). As this Court explained in Ex parte Branch:
“ ‘[T]he trial judge must make a sincere and reasonable effort to evaluate the evidence and explanations based on the circumstances as he knows them, his knowledge of trial techniques, and his observation of the manner in which the prosecutor examined the venire and the challenged jurors. People v. Hall, 35 Cal.3d 161, 672 P.2d 854, 858, 197 Cal.Rptr. 71 (1983); see also [People v.] Wheeler, 22 Cal.3d [258] at 281, 583 P.2d [748] at 764, 148 Cal.Rptr. [890] at 906 [(1978)].
“ ‘In evaluating the evidence and explanations presented, the trial judge must determine whether the explanations are sufficient to overcome the presumption of bias. Furthermore, the trial judge must be careful not to confuse a specific reason given by the state’s attorney for his challenge, with a “specific bias” of the juror, which may justify the peremptory challenge:
‘““The latter, a permissible basis for exclusion of a prospective juror, was defined in Wheeler as ‘a bias relating to the particular case on trial or the parties or witnesses thereto.’ Wheeler, 22 Cal.3d at 276, 148 Cal.Rptr. at 902, 583 P.2d at 760. ...”
“ ‘Slappy [v. State], 503 So.2d [350] at 354 [ (Fla. Dist. Ct. App. 1987) ]. The trial judge cannot merely accept the specific reasons given by the prosecutor at face value, see Hall, 35 Cal.3d at 168, 672 P.2d at 858-59, 197 Cal.Rptr. at 75; Slappy, 503 So.2d at 356; the judge must consider whether the facially neutral explanations are contrived to avoid admitting acts of group discrimination.’
“526 So.2d at 624.
“An appellate court may reverse the trial court’s determination that the non-moving party’s peremptory challenges were not motivated by intentional discrimination, the third consideration in a Batson/J.E.B. inquiry, only if that determination is clearly erroneous. Ex parte Branch, 526 So.2d at 625. Whether the nonmoving party engaged in actual, purposeful discrimination involves consideration of not only the nonmoving party’s credibility, but also the veniremember’s demeanor, and such determinations rest on the trial court’s firsthand observations. As the United States Supreme Court stated in Hernandez, when determinations rest upon credibility and demeanor, they rest ‘ “peculiarly within a trial judge’s province.” ’ Hernandez, 500 U.S. at 365 (quoting Wainwright v. Witt, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)).
“With regard to Floyd’s claim that the prosecutor, the nonmoving party in this case, purposefully excluded African-Americans from his jury, Floyd focuses on the prosecutor’s exercise of a peremptory challenge to remove prospective juror no. 58/I.C. from the venire. The prosecutor, when asked to provide reasons why he exercised a peremptory challenge to remove I.C. from the veni-re, stated that he removed I.C. because he did not know much about her in that she had been omitted from the State’s strike lists and because she did not respond to questions. The trial court found these reasons to be race neutral, see Jackson v. State, 686 So.2d 429, 431 (Ala. Crim. App. 1996)(holding that non-responsiveness to questioning can be a *9 race-neutral reason), and State v. Harris, 184 Ariz. 617, 620, 911 P.2d 623, 626 (Ariz. Ct. App. 1995)(finding the prosecutor’s proffered reason that she lacked knowledge about the veniremember to be race neutral). The trial court further found that Floyd did not satisfy his burden of proving that the prosecutor’s reasons were pretextual or sham and that he engaged in actual, purposeful discrimination in the jury-selection process.
“Floyd maintains that the reasons offered by the prosecutor for his strikes of African-Americans and females do not adequately rebut the inference of actual, purposeful discrimination because, he says, those reasons are pretextual or sham. He argues that I.C.’s alleged lack of responsiveness to questions is pretex-tual or sham and is not supported by the record because during group voir dire I.C., as did a Caucasian veniremember, responded to questions as requested by the questioner by either raising or not raising her hand. See Ex parte Branch, 526 So.2d at 625 (holding that disparate treatment of veniremembers with the same characteristics or who answer questions in the same manner suggests that the reason for striking one over the other is pretextual or sham). Similarly, he further argues that the prosecutor’s lack of knowledge about I.C. is pretextual or sham because the prosecutor did not engage in additional voir dire with I.C. to learn more about her. Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991) (‘[T]he failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination.’).
“This Court, in light of the deference to be accorded the trial court in its determination of whether Floyd satisfied his burden of proving that the prosecutor engaged in actual, purposeful discrimination, cannot conclude from the record that the trial court’s holding that Floyd did not satisfy his burden of proving that the prosecutor engaged in actual, purposeful discrimination is clearly erroneous. We cannot agree with Floyd that the prosecutor engaged in disparate treatment because he used a peremptory challenge to remove I.C. and did not use a peremptory challenge to remove prospective juror no. 21/A.B., a Caucasian male. The record indicates that the prosecutor, who relied heavily upon his impressions and knowledge of the veniremembers in the exercise of his peremptory challenges, knew little about I.C. because she was omitted from his strike lists. The record further indicates that the prosecutor from his strike lists knew that A.B. had not served previously on a jury and that he did not have a criminal history. Under the facts of this case, these known facts about A.B. negate the evidence of any disparate treatment of I.C. and A.B.
“Additionally, the prosecutor’s admission of his lack of knowledge about I.C. when proffering reasons for the exercise of the peremptory challenge does not require the conclusion that the prosecutor engaged in actual, purposeful discrimination. This Court in State v. Bui, 627 So.2d 855 (Ala. 1992), agreed with the United States Court of Appeals for the Fifth Circuit that the ‘ “ ‘[fjailure by a prosecutor to explain every peremptory strike of black jurors is not necessarily fatal to the prosecutor’s ability to rebut a prima facie case ....”” State v. Bui, 627 So.2d at 859 (quoting United States v. Forbes, 816 F.2d 1006, 1011 n. 7 (5th Cir. 1987), quoting in turn United States v. David, 803 F.2d 1567, 1571 (11th Cir. 1986)). Here, the prosecutor admitted that I.C. had been inadvertently omitted from his strike lists and that, *10 consequently, he had little information about her, In light of the prosecutor’s explanation of the process , he used in striking a jury, the prosecutor’s candor that he knew nothing about I.C., his stated reluctance to seat a juror he did not believe was good for the State, and the deference accorded the trial court in making credibility determinations concerning the prosecutor, we cannot hold that the trial court’s finding that Floyd did not satisfy his burden of proving that the prosecutor engaged in actual, purposeful discrimination in the selection of the jury in this regard is clearly erroneous.
“Floyd’s contention that the prosecutor purposefully excluded females from the jury focuses on the prosecutor’s exercise of a peremptory challenge to remove prospective juror no. 5/T.M.A. from the venire. According to Floyd, the trial court accepted át face value the prosecutor’s proffered reason of her age for the removal of T.M.A. from the jury. He maintains that because the prosecutor did not connect T.M.A.’s age to the case, the. reason is pretextual • or sham and evidences actual, purposeful discrimination on the part of the prosecutor. See Ex parte Branch, 526 So.2d at 624 (providing that a guideline for determining whether a prosecutor’s reason for an allegedly discriminatory strike was valid or sham includes ‘ “an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically”’ (quoting Slappy v. State, 503 So.2d 350, 355 (Fla. Dist. Ct. App. 1987))). See also Ex parte Brooks, 695 So.2d 184, 190 (Ala. 1997)(recognizing that ‘age, employment status, and- marital status are not sufficiently race-neutral reasons for a peremptory strike, if the prosecutor gives that reasorn as the sole basis for the strike, where that reason is unrelated to the case’),
“The record, however,- does not support Floyd’s argument that the prosecutor engaged in disparate treatment because the record establishes that the prosecutor did relate the reason of age to the ease. The record establishes that Floyd, a Caucasian, was 33 years old and that T.M.A. was 48 years old at the time of the trial. At the Batson/J.E.B. hearing, the prosecutor stated that he struck T.M.A, because he believed she was within the age range of the juror the defense was trying to seat. A review of the prosecutor’s strikes indicates that, after he struck veniremembers he believed would not be good jurors for the State, he exercised his peremptory challenges to remove veniremembers whose ages were in Floyd’s age range in an effort to prevent the defense from seating the type juror it believed would be pro-defense. Thwarting the defense’s objective in jury selection is a race-neutral reason, and we cannot conclude based on the record before us that the trial court’s finding that Floyd did not satisfy his burden of proving that the prosecutor engaged in actual, purposeful discrimination by striking T.M.A. is clearly erroneous.
“This Court has reviewed the record in light of Floyd’s contention that the State did not provide race- and/or gender-neutral reasons for striking prospective juror no. 59/M.C., prospective juror no. 19/D.B., prospective juror no. 60/L.C,, prospective juror no. 23/R.B., prospective juror no. 35/S.B., and prospective juror no. 70/K.D. The record, however, supports the trial court’s conclusion that the State proffered race- and/or gender-neutral reasons for its peremptory challenges of those jurors. See Whatley v. State 146 So.3d 437, 456 (Ala. Crim. App. 2010) (noting that, *11 ‘ “ ‘[although a juror’s reservations about the death penalty need not be sufficient for a challenge for cause, his view may constitute a -reasonable explanation for the exercise of a peremptory strike.’”’ (quoting Dallas v. State, 711 So.2d 1101, 1104 (Ala. Crim. App. 1997), quoting in turn Johnson v. State, 620 So.2d 679, 696 (Ala. Crim. App. 1992)), and finding a juror’s demeanor to be a race-neutral reason); Smith v. State, 838 So.2d 413 (Ala. Crim. App. 2002) (finding a juror’s’religious/moral conviction against sitting in judgment to be a race-neutral reason); Jackson, supra (finding a juror’s nonresponsiveness to be a race-neutral reason); and Sanders v. State, 623 So.2d 428, 432 (Ala. Crim. App. 1993)(recognizing that age can provide a race-neutral reason). Additionally, in light of the.deference accorded to the trial court in determining whether a prosecutor’s reasons are pretextual or sham, we cannot hold that Floyd, satisfied his burden of proving that the prosecutor engaged in actual, purposeful discrimination.
“‘Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in Batson, the finding will “largely turn on evaluation of credibility.” 476 U.S. at 98, n, 21. In the typical peremptory challenge inquiry, the decisive question will be whether counsel’s race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor’s state of mind based on demeanor and credibility lies “peculiarly within a trial judge’s province.” Wainwright v. Witt, 469 U.S. 412, 428 (1985), citing Patton v. Yount, 467 U.S. 1025, 1038 (1984).’
“Hernandez v. New York, 600 U.S. at 364.
“Nothing before this Court establishes that the trial court’s finding that Floyd did not satisfy his burden of proving that the prosecutor engaged in actual, purposeful discrimination in the selection of the jury is clearly erroneous. ‘ “[A] finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.”’ Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Because this Court doés not have a firm conviction from the record before us that the prosecutor committed a Batson or J.E.B. violation during the selection of Floyd’s jury, Floyd has' not established that the decision of the Court of Criminal Appeals affirming the trial court’s finding that no Batson or J.E.B. violation occurred in the selection of his jury conflicts with prior caselaw.
Ex parte Floyd II, 191 So.3d at 156-160. Floyd petitioned the United States Supreme Court for review of this Court’s decision.
The United States Supreme Court vacated, this Court’s judgment and .remanded the case for further consideration in light of Foster v. Chatman, 578 U.S. —, 136 S.Ct. 1737, 195 L.Ed.2d 1 (2016). Floyd v. Alabama, 579 U.S.—, 136 S.Ct. 2484, 195 L.Ed.2d 820 (2016). On August 1, 2016, this Court asked the parties to file supplemental briefs addressing the issue on remand. The parties have done so. Hav *12 ing considered both the briefs and Foster, this Court concludes that Foster does not require a change in the outcome of this case, and we reinstate our judgment in Ex parte Floyd II.
In Foster, the United States Supreme Court conducted a Batson analysis and determined that the record in Foster established that the State had engaged in purposeful discrimination against prospective African-American jurors. The Court noted that “[t]he Constitution forbids striking even a single prospective juror for a discriminatory purpose.” Foster, 578 U.S. at—, 136 S.Ct. at 1747. The Court held that the record in Foster reflected a “concerted effort to keep black prospective jurors off the jury.” 578 U.S. at—, 136 S.Ct. at 1755.
In his supplemental briefing, Floyd contends that the record in his case, like the record in Foster, establishes that the State improperly focused on race and gender during the jury-selection process. According to Floyd, the jury-selection lists that were marked to indicate race, the prosecutor’s alleged misrepresentations of the record, the prosecutor’s alleged disparate treatment of black and white prospective jurors and male and female prospective jurors, and the prosecutor’s alleged shifting explanations for his strikes demonstrate that the State engaged in purposeful discrimination in the selection of Floyd’s jury and that his conviction must be reversed.
In reconsidering the Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), issues argued by Floyd, this Court is mindful that Floyd did not make a Batson/J.E.B. objection at trial; therefore, at trial Floyd did not believe that the prosecutor, during the jury-selection process, engaged in intentional discrimination against prospective African-American or female jurors. Rather, it was during plain-error review of the record by the Court of Criminal Appeals that that court determined that the prosecutor’s use of his peremptory challenges created a pri-ma facie case of discrimination under both Batson and J.E.B. and remanded the case for a Batson/J.E.B. hearing. These facts are important for at least two reasons. First, they demonstrate that, even though Floyd did not believe that his rights were violated at trial, the appellate courts of this State have been sensitive to Floyd’s rights and have endeavored to ensure that discrimination was not a factor in the selection of the jury that tried him. Additionally, we are mindful that, because the Batson/J.E.B. hearing did not occur at the time the jury was selected when the reasons for the exercise of strikes by both the prosecutor and Floyd were readily available and the demeanor and credibility of the potential jurors were readily evident, the trial court and the parties in this case engaged in recollection during the Batson/J.E.B. hearing. Unlike a case when the Batson/J.E.B, hearing occurs immediately following jury selection, it is understandable in this case that the record is not as clear because the prosecutor’s reasons were provided several years after Floyd’s jury was selected. Therefore, a reviewing court, in light of the procedural history of this case, must be mindful that misrepresentations may be due to a lack of recollection as opposed to pretext and sham. We, however, agree with the United States Supreme Court that “[t]he Constitution forbids striking even a single prospective juror for a discriminatory purpose” Foster, 578 U.S.—, 136 S.Ct. at 1747, and have reconsidered the Bat-son/J.E.B. issues presented by this case.
*13 Floyd maintains that Foster requires that this Court reverse the judgment of the Court of Criminal Appeals. Floyd, however, makes the same arguments he made during earlier appellate reviews. Although he disagrees with this Court’s decision in Ex parte Floyd II, he does not provide this Court with any reason in light of Foster to support a finding that this Court in Ex parte Floyd II did not properly apply the law to the facts of his case in refusing to hold that “the trial court’s finding that Floyd did not satisfy his burden of proving that the prosecutor engaged in actual, purposeful discrimination in the selection of the jury is clearly erroneous.” Ex parte Floyd II, 191 So.3d at 159.
Admittedly, Floyd’s case is similar to Foster’s in that the record indicates that the prosecutors in both cases used a list of potential jurors that was marked to indicate the prospective juror’s race. Floyd argues that this fact clearly demonstrates that discrimination was a factor in the prosecutor’s selection of the jury in his case. The record establishes that the prosecutor acknowledged at the Batson/J.E.E. hearing that the list was marked to indicate race and explained that it was so marked in light of the trial court’s heightened concern that the parties comply with Batson. This Court considered the marked list in our previous review and has reconsidered the entire jury-selection process, including this fact, and we simply cannot conclude, even though the record does contain a list used by the prosecutor indicating the race of each potential juror, that the record in this case evidences a “concerted effort to keep black prospective jurors off the jury.” 578 U.S. at—, 136 S.Ct. at 1755.
After our reconsideration of the Bat-son/J.E.B, issues in light of Foster, as mandated by the United States Supreme Court, this Court reinstates its judgment in Ex parte Floyd II with regard to the Batson/J.E.B. issues, and the other issues addressed therein, and once again affirms the judgment of the Court of Criminal Appeals.
JUDGMENT REINSTATED: AFFIRMED.
Parker, Main, and Bryan, JJ., concur.
Bolin and Murdock, JJ., dissent.
Shaw and Wise, JJ., recuse themselves.*